The STATE of Ohio, Appellee,

v.

POINTER, Appellant.

[Cite as *State v. Pointer*, 193 Ohio App.3d 674, 2011-Ohio-1419.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 24210.

Decided March 24, 2011.

Mathias H. Heck Jr., Montgomery County Prosecuting Attorney, and Carley J. Ingram, Assistant Prosecuting Attorney, for appellee.

Charles A. McKinney and Mark J. Miller, for appellant.

FROELICH, Judge.

{¶ 1} After the trial court overruled his motion to dismiss, William L. Pointer pleaded no contest in the Montgomery County Court of Common Pleas to one count of escape, in violation of R.C. 2921.34(A)(1), a second-degree felony. The trial court found Pointer guilty and sentenced him to the minimum mandatory term of two years in prison, to be served consecutively to the sentence imposed in another case.

{¶ 2} Pointer appeals from his conviction, claiming that the trial court erred in overruling his motion to dismiss. For the following reasons, the trial court's judgment will be reversed, the conviction and sentence for escape will be vacated, and Pointer will be ordered discharged as to this offense only.

I

{¶ 3} In 1997, Pointer was convicted of involuntary manslaughter, a first-degree felony, and felonious assault, a second-degree felony, in case No. 97–CR–449. The trial court sentenced him to an aggregate term of nine years in prison, to be served consecutively to the one-year sentence imposed in case No. 97–CR–1720. The termination entry addressed postrelease control, stating: "Following

the defendant's release from prison, the defendant will/may serve a period of postrelease control under the supervision of the parole board."[1] Under R.C. 2967.28(B), Pointer was subject to a mandatory term of five years of postrelease control for the involuntary manslaughter and a mandatory term of three years of postrelease control for the felonious assault.

{¶ 4} On March 4, 2007, Pointer was released from prison under the supervision of the Ohio Department of Rehabilitation and Correction, Adult Parole Authority ("APA"). At the time of his release, Pointer met with his parole officer and signed and initialed the conditions of supervision, which set forth his obligations under postrelease control. Paragraph two of that document included notice "that if I am a releasee and abscond supervision, I may be prosecuted for the crime of escape, under section 2921.34 of the Revised Code." On March 5, 2007, Pointer also signed a separate notice informing him that postrelease-control supervision constitutes detention and that he could be convicted of escape if he absconded from supervision; Pointer again signed this form on October 27, 2008.

{¶ 5} Pointer failed to report to his parole officer on May 15, 2009. On December 1, 2009, Pointer was charged with escape due to his failure to report between June 22, 2009, and November 3, 2009. He was arrested for this charge on January 8, 2010.

{¶ 6} Pointer moved to dismiss the indictment for escape. He claimed that he could not be charged with escape since the APA lacked the authority to supervise him, because the trial court in case No. 97–CR–449 had not properly imposed postrelease control. Pointer supported his motion with a copy of the termination entry in case No. 97–CR–449 and a termination-of-supervision notice, which stated that "[u]nder the Authority of the *Supreme Court decision*, the Ohio Adult Parole Authority hereby issues a Final Release on the above number to take effect on 2/25/2010." (Emphasis sic.)

{¶ 7} In response, the state argued that *State v. Jordan*, 124 Ohio St.3d 397, 2010-Ohio-281, 922 N.E.2d 951, was controlling, and that *Jordan* permitted the state to prove, without evidence that the sentencing court had properly advised him of postrelease control, that Pointer was subject to supervision. Pointer's wife subsequently filed a "Motion to Dismiss Amended [and] Correction of Ohio Supreme Court Case Authority Memorandum," which the trial court struck.

{¶ 8} The trial court overruled Pointer's motion to dismiss. The court held that *Jordan* governed the circumstances before it and that the evidence was

---

1. Pointer moved to supplement the record with a transcript of the sentencing hearing in case No. 97–CR–449. The transcript reflects that the trial court did not mention postrelease control at sentencing. Although this court originally granted Pointer's motion to supplement, we subsequently vacated that decision and denied the motion to supplement the record.

sufficient, at that stage of the case, to demonstrate that Pointer was under detention and subject to the escape statute. The trial court concluded, "As it relates to his Motion to Dismiss, Defendant has failed to meet his burden on this Motion of demonstrating a lack of authority by the [Ohio Department of Rehabilitation and Correction] to supervise him such that this court would be compelled to dismiss the indictment herein."

{¶ 9} Subsequently, Pointer again moved for an order of dismissal, arguing that he had obtained additional documents to support the conclusion that the APA lacked authority to impose postrelease-control sanctions on him. Before the court ruled on that motion, Pointer entered a plea of no contest to the escape charge. The court found him guilty and sentenced him accordingly.

{¶ 10} Pointer appeals from his conviction, raising one assignment of error.

## II

{¶ 11} In his sole assignment of error, Pointer claims that the court erred in denying his motion to dismiss. He asserts that because the trial court in his 1997 case failed to properly impose postrelease control, the APA was not authorized to supervise him and he was not under detention for purposes of the escape statute. In his reply brief, Pointer cites our recent opinion in *State v. Renner*, Montgomery App. No. 24019, 2011-Ohio-502, 2011 WL 345806.

{¶ 12} In the indictment, the state charged Pointer with one count of escape, in violation of R.C. 2921.34(A)(1). The indictment alleged that Pointer, between June 22, 2009, and November 3, 2009, "knowing that he was under detention or being reckless in that regard, did purposely break or attempt to break such detention, or purposely fail to return to detention, while being detained" for the charges of involuntary manslaughter and felonious assault.

{¶ 13} As a threshold matter, the state asserts that Pointer's no-contest plea prevents him from challenging the facts alleged in the indictment, including the fact that he was under detention when he failed to report to his parole officer. The state argues that a motion to dismiss under .Crim.R. 12(C)(2) is limited to whether the language of the indictment alleges the offense. The state thus asserts that Pointer should have raised whether the evidence was sufficient to establish his detention in a Crim.R. 29 motion for acquittal at the conclusion of the state's case at trial, not through a pretrial motion to dismiss.

{¶ 14} Pointer responds that the issue raised in his motion to dismiss was whether the indictment was legally sufficient to support a charge for escape. He states: "A decision as to whether postrelease control was improperly imposed, and thus whether the DRC lacked the authority to supervise the Appellant, is strictly a legal issue for the court to decide. Therefore, a pretrial motion to

dismiss pursuant to Crim.R. 12(C) is appropriate and may be reviewed on the merits, even after a no contest plea."

{¶ 15} Crim.R. 12(C) governs pretrial motions. It provides that "prior to trial, any party may raise by motion any defense, objection, evidentiary issue, or request that is capable of determination without the trial of the general issue." The rule requires certain issues to be raised before trial, including defenses and objections based on defects in the institution of the prosecution; defenses and objections based on defects in the indictment, information, or complaint (with two exceptions); motions to suppress evidence; requests for discovery under Crim.R. 16; and requests for severance of charges or defendants under Crim.R. 14. Id. A defendant who enters a plea of no contest may raise on appeal that the trial court erred in its ruling on a pretrial motion. Crim.R. 12(I).

{¶ 16} "A motion to dismiss an indictment tests the legal sufficiency of the indictment, regardless of the quality or quantity of the evidence that may be introduced by either the state or the defendant." *State ex rel. Steffen v. Court of Appeals, First Appellate Dist.,* 126 Ohio St.3d 405, 2010-Ohio-2430, 934 N.E.2d 906, ¶ 34. Accordingly, in ruling on a motion to dismiss an indictment, the trial court may not examine the sufficiency of the state's evidence. *State v. Miller* (Dec. 4, 1998), Montgomery App. No. 17273, 1998 WL 833796. Rather, the court must look to the indictment to determine only whether the charges as set forth describe an offense under the law of the state. Id. "Crim.R. 12 permits a court to consider evidence beyond the face of an indictment when ruling on a pretrial motion to dismiss an indictment if the matter is capable of determination without trial of the general issue." *State v. Brady,* 119 Ohio St.3d 375, 2008-Ohio-4493, 894 N.E.2d 671, ¶ 3. However, whether sufficient evidence exists to convict on an indictment—that is, to persuade the finder of fact of all of the essential elements of the offense beyond reasonable doubt—is a matter that must be determined through a trial on charges alleged in the indictment; there is no pretrial mechanism for this purpose. *State v. Netzley,* Darke App. No. 07–CA–1723, 2008-Ohio-3009, 2008 WL 2477452, ¶ 7.

{¶ 17} It is indeed a thorny procedural issue as to what error was preserved by Pointer's no-contest plea. The resolution of that issue depends on whether the motion to dismiss in this case addressed the sufficiency of factual evidence regarding whether Pointer was "under detention" or the legal question as to what constitutes "detention." In our view, these are two distinct matters. Whether a person is lawfully under postrelease control and whether postrelease control constitutes a form of "detention" are threshold legal determinations, not matters to be proven at trial. See, e.g., *State v. Boggs,* Montgomery App. No. 22081, 2008-Ohio-1583, 2008 WL 853341 (considering the sufficiency of the state's evidence of escape after making the legal determination that a person on

postrelease control was "under detention" for purposes of the escape statute). Before a jury could consider the factual question whether Pointer was a person under "supervision by an employee of the department of rehabilitation and correction * * * on any type of release from a state correctional institution," R.C. 2921.01(E) (defining "detention"), the court would have to decide whether such supervision, even if it were factually proven, was lawful.

{¶ 18} Pointer's motion to dismiss raised whether the 1997 sentencing court validly ordered postrelease control and thus whether the APA had the authority to supervise him upon his release from prison in 2007. The resolution of those questions required a legal determination whether the portion of the 1997 judgment entry imposing postrelease control was void in light of Ohio Supreme Court precedent. The motion did not involve questions regarding whether Pointer was, in fact, under APA supervision. Accordingly, Pointer's motion to dismiss was capable of determination without the trial of the general issue, in accordance with Crim.R. 12(C), and Pointer's no-contest plea permitted him to raise the issue on appeal that the trial court erred in its ruling on his pretrial motion. Crim.R. 12(I).

{¶ 19} The trial court's decision, which treated Pointer's motion as proper under Crim.R. 12(C), recognized this distinction in addressing the Ohio Department of Rehabilitation and Correction's "lack of authority" as the dispositive issue. Similarly, the editors of 2 Ohio Jury Instructions (2011), Section 521.34(A)(1), comment that "questions of irregularity in bringing about or maintaining the detention and of lack of jurisdiction of the detaining authority are also questions of law for the court to decide." We seriously doubt that the interpretation of the relevant Supreme Court authority—e.g., *State v. Jordan,* 104 Ohio St.3d 21, 2004-Ohio-6085, 817 N.E.2d 864; *Hernandez v. Kelly,* 108 Ohio St.3d 395, 2006-Ohio-126, 844 N.E.2d 301; *State v. Bloomer,* 122 Ohio St.3d 200, 2009-Ohio-2462, 909 N.E.2d 1254; *State v. Singleton,* 124 Ohio St.3d 173, 2009-Ohio-6434, 920 N.E.2d 958; *State v. Jordan,* 124 Ohio St.3d 397, 2010-Ohio-281, 922 N.E.2d 951; and *State v. Fischer,* 128 Ohio St.3d 92, 2010-Ohio-6238, 942 N.E.2d 332—is within the province of the jury.

{¶ 20} Turning to the merits of Pointer's argument, we find *Renner,* 2011-Ohio-502, 2011 WL 345806, to be dispositive. In *Renner,* the state appealed from a decision granting Renner's postsentencing motion to withdraw his guilty plea to escape on the ground that postrelease control had not been properly imposed in his 2002 case. The judgment entry in the 2002 case stated: "The Court advised the defendant that following the defendant's release from prison, the defendant will/may serve a period of post-release control under the supervision of the parole board." When Renner was released from prison in 2007, he met with his parole officer, who explained the conditions of his parole. In addition, he signed and

initialed a form entitled "Conditions of Supervision" that stated that he could be charged with escape if he violated the terms of his supervision. Renner was later charged with escape when he failed to report to his parole officer, and he pleaded guilty to the charge.

{¶ 21} In addressing whether the trial court properly allowed Renner to withdraw his guilty plea, we rejected the state's argument that it could obtain a valid conviction for escape regardless whether the underlying termination entry properly imposed postrelease control. We reasoned:

{¶ 22} "In *State v. Jordan,* 124 Ohio St.3d 397, 2010-Ohio-281 [922 N.E.2d 951], the Ohio Supreme Court held that in order 'to obtain a conviction for escape under R.C. 2921.34(A)(1), the state may prove that the defendant was subject to post-release control without proving that during a sentencing hearing the trial court orally notified the defendant that he would be subject to post-release control.' However, the Supreme Court specifically stated in *Jordan* that its holding did not control in a situation similar to the instant case with respect to whether a defendant can be proved to be under detention for purposes of R.C. 2921.34(A)(1) if the evidence affirmatively establishes that the trial court failed to meet its duties with respect to the imposition of postrelease control. 124 Ohio St.3d at 399 [2010-Ohio-281, 922 N.E.2d 951].

{¶ 23} "It is undisputed that in the termination entry filed on April 30, 2002, the trial court failed to inform Renner that he was subject to a mandatory term of five years of postrelease control based on his conviction for kidnapping (sexual activity), a felony of the first-degree. R.C. 2967.28 provides that every prison sentence for a felony of the first-degree or a felony sex offense shall include a mandatory five-year period of postrelease control. *State v. Shackleford,* Montgomery App. No. 22891, 2010-Ohio-845 [2010 WL 761326]. A trial court is required to notify the offender at the sentencing hearing about postrelease control, and is further required to incorporate the specifics of that notice into its judgment of conviction setting forth the sentence the court imposed. Crim.R. 32(C). *State v. Jordan,* 104 Ohio St.3d 21, 2004-Ohio-6085 [817 N.E.2d 864]; *Hernandez v. Kelly,* 108 Ohio St.3d 395, 2006-Ohio-126 [844 N.E.2d 301].

{¶ 24} "As we recently stated in *State v. Terry,* Montgomery [Darke] App. No. 09CA0005, 2010-Ohio-5391 [2010 WL 4398193], among the most basic requirements of post-release control notification per R.C. 2967.28 and the Ohio Supreme Court's existing precedent is that the court must both notify the offender of the length of the term of post-release control that applies to his conviction(s) and incorporate that notification into its journalized judgment of conviction pursuant to Crim.R. 32(C). *State v. Bloomer,* 122 Ohio St.3d 200, 2009-Ohio-2462 [909 N.E.2d 1254], at ¶ 69. Both are necessary in order to authorize the APA to exercise the authority that R.C. 2967.28 confers on that agency.

{¶ 25} "In cases in which a trial judge does not impose postrelease control in accordance with statutorily mandated terms, that portion of the sentence is void. *State v. Bloomer,* 122 Ohio St.3d 200 [909 N.E.2d 1254], at ¶ 69, 71; *State v. Fischer,* [128 Ohio St.3d 92] Slip Opinion No. 2010-Ohio-6238 [942 N.E.2d 332], at ¶ 30; R.C. 2967.28(B). This holding only applies to defendants who were sentenced prior to July 11, 2006. *State v. Singleton,* 124 Ohio St.3d 173, 2009-Ohio-6434 [920 N.E.2d 958]; R.C. 2929.191; *State v. Terry,* 2010-Ohio-5391 [2010 WL 4398193]. R.C. 2929.191 creates a special procedure to correct defects in notification at the sentencing hearing and/or in the judgment of conviction. *Id.* We also note that '[p]rinciples of res judicata, including the doctrine of the law of the case, do not preclude appellate review. The sentence may be reviewed at any time, on direct appeal *or by collateral attack.' State v. Fischer,* [128 Ohio St.3d 92] 2010-Ohio-6238 [942 N.E.2d 332], at ¶ 30.

{¶ 26} "The State argues that the language in Renner's sentencing entry was sufficient to subject him to the supervision of the APA upon his release from prison in Case No.2001 CR 768. The State failed to advance this argument before the trial court, and has therefore, waived it for the purposes of this appeal. Even if the State had preserved this argument for appeal, we find that it lacks merit. Based on his conviction for kidnapping, Renner was subject to a mandatory five-year term of postrelease control. The language in Renner's 2002 termination entry failed to reflect that fact. Since the termination entry failed to contain the statutorily mandated term of five years, it was insufficient to notify Renner that he would be subject to the supervision of the APA.

{¶ 27} "Upon review, we find that the termination entry in Case No.2001 CR 768 did not affirmatively state that Renner would be subject to five years mandatory post-release control following his release in 2007, and that portion of his sentence was, therefore, void. Thus, the APA did not have the authority to enforce post-release control restrictions thereunder, and he was not legally under detention at the time the alleged escape was committed for the kidnapping charge in Case No.2001 CR 768. A void post-release control supervision cannot support a charge of escape. In light of the foregoing, the trial court did not abuse its discretion when it granted Renner's motion to withdraw his guilty plea." *Renner,* 2011-Ohio-502, 2011 WL 345806, at ¶ 14–19.

■ {¶ 28} As in *Renner,* the termination entry in case No. 97–CR–449 stated that Pointer "will/may serve a period of post-release control under the supervision of the parole board" after his release from prison. The judgment entry did not state that Pointer would be subject to a mandatory term of five years (or three years) of postrelease control. Accordingly, the 1997 termination entry affirmatively demonstrates that the trial court failed to properly impose postrelease control. As a result of that failure, the portion of the 1997 judgment entry

that imposed postrelease control was void, and the APA lacked the authority to enforce that provision by supervising Pointer.  Pointer, as a matter of law, was not under detention for purposes of the escape statute.  Accordingly, the trial court erred in denying Pointer's motion to dismiss.

{¶ 29} The assignment of error is sustained.

### III

{¶ 30} The trial court's judgment reversed, and Pointer's conviction and sentence for escape is vacated.  Pointer is ordered discharged as to this offense only.

Judgment reversed
and sentence vacated.

FAIN and DONOVAN, JJ., concur.